et al. Mr. Clark for the appellants, Mr. Stern for the appellees. Good morning and may it please the court. George Clark on behalf of Appellants True and the National Archive. With me at counsel's table is Anne Weissman and Murray Oldeck. The Presidential Records Act reflects congressional balancing of the rights of the president to act in an effective manner with the rights of the people to have the history of those actions preserved. That balancing was done in a time of great conflict in American history when the legislative and executive branches were dealing with the fallout of the Nixon abuse of power and trust. And it reflected a sea change in how presidential records were considered and how they were to be maintained. Now as part of this balancing, it is undeniably true that the president was given significant discretion in how to preserve the records of his presidency. But it's also undeniably clear from the text of the PRA itself that Congress mandated the president to do three things. To classify or you can call it categorize records as presidential or personal. To implement policies and guidelines to do that consistently across his administration. And also to take certain ministerial steps prior to destroying any of those records that were presidential. The use of the word shall and other similar mandatory language in those sections of the PRA reflects those congressional mandates. It's not for the president or respectfully this court to unbalance the character. Let's get to the point. Armstrong One, just going to give you my concerns. Armstrong One in my view is a very strong and clear statement that there is no judicial review in this case. It says when we're talking about the creation, management, or destruction of records under the PRA, it is not subject to judicial review, period. And you spend virtually no time in your reply brief addressing that question and respectfully make a vague attempt to suggest that Armstrong Two distinguishes one. I respectfully suggest to you in my reading of the cases that's not an accurate picture of the cases. Armstrong Two involved guidelines where the president was attempting to overreach by grabbing records that were otherwise not under the rubric of the PRA and classify them as PRA to get the protected status there. Armstrong One, as far as I can tell, Armstrong Two I think confirms what One says, which is the court has no role. Well, I would say two things in response to that, Your Honor. At 1294 in the Armstrong Two opinion, Armstrong Two is talking about Armstrong One, and they say that the Armstrong One opinion did not encompass, quote, the initial classification of materials as presidential records. And this case is about the initial classification. Your account for Clause Four is the only time that you make any attempt to reach into the FOIA and Federal Records Act question, which is what Armstrong Two is about. The president was reaching to get records that were admittedly covered by FOIA and Federal Records Act and put them in the PRA category. And the court said, no, you can't do that. And we were looking at guidelines that said that. And we said, of course we can look at that. That's an initial determination to reach and get decisions that belong in the agencies. You can't do that. That's not this case. This case, as I read, I went back and looked, I looked over and over. Your complaint is talking about what the president does with respect to the administration of the PRA and how the president handles records that are covered by the PRA. And the objections make perfectly good sense. Let me be clear. They make perfectly good sense. That's not the issue. The issue is whether there's judicial review. Your Honor, I think, just stepping back, the Armstrong Two opinion did talk about FOIA. I absolutely agree with that. It was about FOIA and the FRA. That's what that case was about. That's not what this case is about. You dropped the fourth count. Did your court dismiss that it's not on appeal? Your Honor, I'm not saying that the case is exactly the same as Armstrong Two. But Armstrong Two was talking about a situation when there was a classification decision at the beginning of the entire process that infected the rest of the process. As you said, the specific classification decision they were talking about there was saying, these materials are his agency, so therefore it impacted FOIA. The classification decision we're talking about is one where you destroy a record before it can be classified, okay? Yeah, but the problem is, read Armstrong One. It is talking about administration classification destruction of records under the PRA. Not reviewable. Well, I think, again, Your Honor, that language from 1294, that those opinions did not deal with the initial classification of materials of presidential record. Classification meaning nothing more, and if you read Armstrong Two carefully, nothing more than president overreaching and saying, oh, there's some other records out here, they belong in the agencies. No, I'm putting them under the PRA rubric so I can control them. That's not what this case is about. This case is about records that are within the compass of the PRA, and you want perfectly reasonably, you're saying there's some ministerial decisions that are being made that appear to be inconsistent with the PRA. I'll concede that. They look ministerial, they look inconsistent. The problem you have is, Armstrong One says they're not reviewable. Your Honor, I think the way that the language with respect to categorization is, when you think about this technology, this technology is preventing that initial classification of records, and that is, from that perspective, something that... You read Armstrong One, that's the consequence of Armstrong One. There's no question that if you allow the president to do what Armstrong One says the president can do with no court review, it will eventually result in no FOIA review later on, after the president's gone. No question. That's the consequence of Armstrong One. But Armstrong One was talking about, going back to this balancing, the whole idea behind the PRA was, we're going to let the president have a lot of discretion in how he manages day to day, but we're going to make sure that things get preserved. There's no question there were congressional judgments being made, and some of them were perfectly reasonable. That's not the issue. The issue is, is it judicially reviewable? So here's another way of looking at it, maybe, which is, in Armstrong One, there was FOIA and there was the Presidential Records Act, and one way of understanding Armstrong One was that the Federal Records Act was the basis of the authority for the court to police the line that the administration was drawing between what records are federal and what records are presidential. And here, you're on the other side of the category of presidential. You have a similar, very, very similar structure of inquiry, which is, is the president abusing the line here between presidential records and personal records? Right? And the question is, what is the statutory authority on which the court rests in reviewing policing that line that plays an analogous role here to the role that the Federal Records played in Armstrong Two? Federal Records Act played in Armstrong Two. Thank you, Your Honor. And I think we're on the same page with respect to that. And I think there's two questions, I think, in Your Honor's, two parts of Your Honor's question. One would be, does FOIA, okay, we, we have not pressed the FOIA issue here at the... Well, you've pressed a FOIA issue encompassed within the Presidential Records Act issue, but the question of whether this action could be done by executive order is the claim for that's abandoned. Exactly, exactly. But, but the, the question here is, these documents will eventually be subject to FOIA. Okay, yes. So, but let's just focus on that. You, you were about to say you aren't pressing the FOIA issue here. What are the consequences for your argument for the fact that you didn't appeal the fourth claim? Well, I think that could be viewed, if FOIA is the only trigger that allows us to bring this case forward. If we need FOIA... That's why you have standing, isn't it? Well, I, I don't think so, Your Honor. I think we... You have standing. It's because you, you, and he accepted it, that you, your claim that you need to preserve these documents for a future FOIA request under the PRA, right? Your Honor, that, that factually, that is correct, and the government conceded standing on that basis. I think the question is, do we, do we need to show that FOIA, even though it's going to be 5, 10 years from now, that, that, that abuse of FOIA is the only trigger that we have? We don't view... If I don't see that, then, without FOIA, then I'm completely with Judge Edwards. I don't see how you distinguish this case from Armstrong. Well, I think Armstrong 1 talked about class, talked about... Armstrong 1 and 2 have to be read together. But Armstrong 2 said that Armstrong 1 did not deal with initial classification decisions, and it didn't say that initial classification decisions are not, are not reviewable. And it actually has language saying that if there's, if there's something that's going to give the President carte blanche to take a whole category of... Yeah, but, excuse me, let's go back to standing for a minute. If, if, if it's just a PRA case, if all you're doing is challenging the classification, and FOIA has nothing to do with it, where does your standing come from? Your Honor, it isn't just a PRA case. Well, that's why I'm asking you this question. It isn't just a PRA case. At the end, the reason why, if we ever, never had any right to get these records, let's say FOIA didn't exist, or that we had no right to get those records, ultimately, we would have no standing, because it wouldn't matter. The whole balance is about the people having the right to these records, and the people's right to the records is FOIA. But how do you have standing to bring that? Without... We're the people. I mean, we are people of the United States, and, and, and my clients are people... But how do people get access? The people get access to presidential records in the future through FOIA, right? They do. Well, then why, why are you resisting saying that the key to your case is FOIA? I don't think I'm resisting saying it the way I... I don't understand that. I don't think I'm resisting saying it. If the key, if the key is absolutely correct, that the key ultimately to my clients getting these records is FOIA. Right. That's what gives you standing. That's what gives the people the right to the document. That's right, Your Honor. That's right. Okay. And the, and the district court was persuaded, based on your affidavit, that that's why you had standing. Well, I think, well, I think the government conceded it, Your Honor, but... All right. But the, but the question that we have is, or I guess the debate we're having is, we do not view Armstrong, one, as illuminated by Armstrong, two, as impacting the initial classification of records. I don't think that's been resolved yet, whether something like this that sweeps a whole category of documents off the table is not reviewable under the PRA. Okay. Pursuant to the PRA, that's all. There are no guidelines as in Armstrong, two, which are focused on FOIA and the FRA. All you're talking about here is actions being taken under the PRA, period. And there's no way you can read respectfully, there's no way you can read Armstrong, one, not to say that's not reviewable. These are, it's big, I was All of the management decisions, including in destruction, have everything is subject. And then Armstrong, two, is a very different, separate case where there were written guidelines where the president overreached. And the president said, wait, there are other records out there. They're not PRA stuff. I'm going to make them PRA because I have an advantage of putting them in the PRA category. We reviewed those guidelines and said, no, that's nonsense. You can't make up stuff like that. And we said, that's impermissible. It was a FOIA FRA case. This is not a FOIA FRA case. And the count that addressed that, I went back and looked at your complaint again today, you dropped. It's not on appeal. Your Honor, that count was a count about applying the take care clause to federal regulations. The problem is that count is where you amplify all of your concerns about FOIA. I went back and looked at all of your concerns about FOIA and how this has an effect under the Freedom of Information Act and the Federal Records Act. All of that is played out with respect to that count. Your Honor, the Federal Records Act and, or the FOIA may be cited more in claim four, but if you look at paragraphs 93 and 94 of our complaint, we talk specifically about how this disruption is impacting. And the preservation of the records is the key to being able to access them. You can't have FOIA if you don't have records. And Arms 41 said we can't review matters with respect to the destruction of records under the PRA, right? Classification, that's correct, but classification they can. We're not talking about destruction. We're talking about classification. You can't destroy something without classifying it under the PRA. These apps destroy it before anybody can look at it and classify it. It hasn't been categorized into presidential or personal yet. This is not a case about destruction. It's a case about classification and categorization. And as to that, Armstrong too says we have a hole. We can review. But Mr. Clark, the government's not taking the position that these records are personal records. Are they? Your Honor, I don't think they're taking a position at all with respect to it. Right. So if they stand up and say, oh, we acknowledge that these are presidential records. There's no dispute here that any of the records at issue might be personal. Does your case go away? It doesn't, Your Honor, because there has to be a categorization of those two things, okay? And we can imagine hypotheticals in which imagine if the guidelines said you can only use these apps for personal purposes, and we delegate to you the decision, you, everybody who uses these apps, the power to decide whether something's personal or presidential. We might still try to argue that that's too much delegation, but I think we'd have a problem at that point. If there were such a guideline? If there was such a guideline. So you say there just needs to be something, that the Presidential Records Act requires that there be some institutional response to the ministerial duty to categorize? Yes. That's exactly right, Your Honor. And how do you explain this issue? One last thing. I'm reading from the case. The PRA accords the President virtually complete control over his records during his term of office. Congress could not have intended to allow courts at the behest of private citizens to rule on the adequacy of the President's record management practices or overrule his records, creation, management, and disposal decisions. Your Honor, I think they're talking about records that have already been categorized as presidential. That's not what the sentence says. Well, but if you read it in the context of Armstrong 2, Armstrong 2 is clear in that 1294. It's very clear. It talks about what Armstrong 1 does, and it says it does not deal with the initial classification of materials. It's a big reading of Armstrong 2. I don't see it. Let's hear from the Governor. Okay. Thank you. We'll give you a few more minutes. Thank you, Pat. May it please the Court, I'm Mark Stern for the Government. I think that the colloquy about Armstrong 1 and Armstrong 2 illustrates why this case cannot be distinguished. I mean, to the extent that it can be distinguished, it only presents a far weaker case than Armstrong 1 did. Armstrong 2 in no way took back anything that Armstrong 1 said. On the contrary, the Court said that the PRA immunizes actions under the PRA from judicial review. And the entire basis for the Court undertaking review in Armstrong 2 was the fact that the PRA incorporates the FOIA, and therefore, what the Court said was, look, I've got a potential there would clash between two statutes. I can enforce the FOIA in that case, and Mr. Stern go ahead. Let me just ask you an antecedent question, okay? When the Government conceded that the crew had stand-in, was that just with respect to Claim 4? Your Honor, I'm sorry, I don't know the answer, but the... Well, why don't you just tell me what you think? Do you think that the crew's claim that its goal is to seek these documents after the President's term is over under FOIA, which the Government said gives them standing? Does that give them standing for just Claim 4 or for Claims 1 and 3 also? I guess, Your Honor, the way that I've understood it is... Under what? The way that I've understood the standing issue here, and the reason that we didn't pursue it on appeal, is that what plaintiffs are saying is eventually records under the Presidential Records Act will become available. Correct. And then at that distant date, they have an interest in seeing them, and we thought that this might be... Why isn't this case, in a sense, just like Armstrong? Because... Let me tell you why I think it is, and you can tell me why I'm wrong, okay? In Armstrong, the Court said, this Court said, that judicial review was necessary to prevent the President from using the Presidential Records Act to sweep up documents that were otherwise covered by FOIA, right? Yes. That's what that was all about. Yes. And their argument here is that by failing to classify these messages, messages that are Presidential Records are being destroyed, and therefore, in the future, unavailable under FOIA. So just as judicial review was necessary in Armstrong to protect access to future access to Presidential Records under the Presidential Records Act and FOIA. That's their argument. That is their argument. Pardon me? That is their argument, yes. Okay. So why is that wrong? It's wrong because the fact that they eventually can get documents down the road does not mean that right now, all of the defining, there's no allegation here that these are subject to FOIA, that these are agency records. No, they're alleging, they're alleging that you don't know whether they're subject to FOIA eventually because they haven't been classified. Right, but look, that's their argument. No, I mean, first of all, that makes no sense. No. There's no classification requirement. As the district court said, there's no classification requirement in the sense that they mean. I mean, look, we're all Federal, you know, we're all covered by the Federal Records Act. We are responsible for making sure that documents that are covered by the Federal Records Act are appropriately preserved. We make decisions all the time individually that, you know, a note that we send to somebody, you know, on a personal matter isn't covered. Nobody thinks that there's a formal classification process. No, but there's guidelines. There's policy and guidelines on that. And there's certainly policies and guidelines that have been issued in this case. The White House counsel issued, like, very detailed guidelines that are in place now. And they specifically say you can't, like, do anything that fails to preserve a record. Really, they couldn't be clearer about that. Are those detailed guidelines in the record in this case? They were submitted in the – to the district court. They're also on the National Archives website. Plaintiffs say the court shouldn't look at them. But this is a motion to dismiss. Well, plaintiffs – These weren't part of the – I mean, we're looking here at – I mean, I understood if you moved for summary judgment, you could do that. But these aren't part of the record. Your Honor, this is subject to judicial notice. Plaintiffs, like, the plaintiffs come in and they cite a series of newspaper articles. And then, like, their position is, well, we – the court could look at newspaper articles. But it shouldn't look at what's publicly available, that obviously can be taken judicial notice of, and instead should proceed into a very delicate area and question what has been the precedent in this court for 30 years. And when Judge Wald wrote the Armstrong I decision, and when Judge Mikva wrote Armstrong II, they understood full well that they were saying, no, you cannot review. There was no basis for coming at them. And to the extent there are supposedly violations, Armstrong also said, with respect to the Federal Records Act, this court has no ability to police violations. If you wanted – and this is under the Federal Records Act, where there is an enforcement scheme. Counsel just said that that's not what they're seeking. What they're seeking is a formal – some sort of process by which these text messages are classified as either presidential records or personal. That's all they're seeking. There's never been a – like, that is so contrary to the language that Judge Edwards read out that said – How about the statute? The statute says they have to be classified, doesn't it? It says that there are talks about categorization. It doesn't say that you have to promulgate – though, in fact, I mean, like, there has – I mean, there are very clear instructions that have been promulgated, but that's not what the statute commands. Well, set those aside for a minute. Let's just set those aside for a minute. Let's just assume for – just for purposes of argument, okay, that those aren't properly before us. The statute does require, doesn't it, that these records be classified as either presidential or non-presidential, right? No. I mean, what the statute contemplates is that there are going to be decisions made about what's personal and what's not. Right. They don't necessarily have to be made, and they can't be made by the president or some – or any one person. Plaintiff's claim is that the – what's happened is that the – that there's been a use of apps that is being allowed to effectively sort of by – condoning this platform, that that has undermined the Presidential Records Act. We don't think that that's reviewable because, like, after all, in Armstrong 1, the claim was that federal record – presidential records documents were about to be destroyed. That's – but here – I'm sorry. Finish your sentence. I'm sorry. I didn't mean to interrupt. No, I can't remember the end of it. So if we had a situation in which a president said to staff in the White House, this is my house, everything that's said here is personal, not presidential record, and therefore doesn't need to be preserved, is it your view as a matter of law that that practice, policy would be completely unreviewable under the Presidential Records Act? By the judiciary? Yes. By Congress? No. This was – I mean, look what happened here. A newspaper article comes out saying there's use of apps. Immediately, Congress contacts the White House Counsel. In fact, there had already been guidelines sort of in place. The – and then the White House – like, unlike prior administrations, which had not actually made public their guidelines on this, this administration did make them public. What guidelines are you referring to? I'm not sure what you're talking about.  The memorandum you mean? The memorandum, yes. The memorandum that just says we follow the Presidential Records Act? No, no, no. That was the letter to Congress. The McGinn memo – I think it's of February 17th, 2017 – sort of goes through and says any time you use – first of all, it says don't use anything other than your government account. And then if you're ever going to do something like not – like outside of that, you've got to talk to us first and make it entirely clear that if you are going to use something other than your government account, that you have to one way or another, either by taking a screenshot or doing whatever you can do, then those things have to be then moved into the government records keeping. And to the extent that you can't do that with an app, obviously that, like, simply can't be used. Is there anything in the PRA that mandates retention of records? I mean, we're making an assumption here, and I think it may be incorrect. There is something in the PRA that says if the President chooses to destroy, you should talk to the archivist and confer. But at the end of the day, if the President and the archivist disagree, the President wins, right? That's correct. I mean, so the assumption that we're worried about FOIA later on because we want to see these records later on is based on the assumption that there's a mandate that the records will exist. And there is no such mandate under the law. That's correct. We're resting on the goodwill and good faith and integrity of Presidents to follow the law. But the PRA does not mandate these records exist. No, and I agree, Your Honor, that's exactly what Judge Walsh said. He said, look, you may or may not agree with Congress's decision to establish a scheme that depends on the good faith of future Presidents. And the Court says that explicitly. But that's what they've done. Mr. Stern, can I just go back to basics here? I want to make sure I understand your position. 2203b of the statute says that documentary materials prepared or received by the President to the extent practical shall be categorized as Presidential records or personal records, right? Is it your position that the memorandum does that? Is that your argument? No. The – when each document – the decisions – I mean, it sets up a process for doing that. Yeah. In other words, is it your position that the memorandum you're referring to satisfies the obligation under 2203b? Absolutely. Because what it does – Now, suppose there wasn't a memorandum. I mean, I still think that there would not be an enforceable duty. No, skip – I'm asking you the earlier question. Don't jump to enforceable. Maybe you're right that nothing's enforceable here. But doesn't this statute require presidential materials to be, quote, categorized as Presidential or personal records upon their creation or receipt? That's what it says. The – what I don't think that this, like, has ever been understood to require and certainly not the understanding in the Federal Records Act context either is that there be a central formulary. I didn't say that. I'm not talking about how it's done. I'm just asking whether it has to be done under the statute. The statute says, shall. We could argue about how it's done, but reading this language, I don't see how you can possibly argue that in some way the President has to, quote, categorize these documents as presidential or personal records. I'm reading from the statute. I think that what has to happen is that people who work in either the Justice Department or, in that case, the White House, are responsible for making sure the documents that are properly, sort of, come within one of those statutes, they have to make categorizations. It's not that, in my case, the Attorney General makes categorizations or establishes a means of oversight. But you're told, like I'm told, you better, like, comply with the law. And that's what, and I think, therefore, you know, even absent legal. But the answer is yes. There is an obligation. It may not be enforceable, but the simple answer is yes, there's an obligation to categorize. Yes, I'm just. That's not a big point. It seems to me you're arguing not reviewable. I mean, that's the only thing you've got to think about. Clearly, a couple of ministerial responsibilities here that, if enforceable, we can enforce easily. They're pretty straightforward. Categorization is one of them. So I don't know why you're fighting that. It's, your claim, I thought, was it's not reviewable. It is, Your Honor. I mean, but Judge Tatel has repeatedly asked me to consider them as being reviewable. Well, that's only because you said there's no obligation. Right. I'm with, my view about this was the same as Judge Edwards. It looks to me like, I mean, it's a no-brainer. The President has to do this under the statute. And the allegation is it isn't being done. And if the memorandum's not there, your only argument is it's not judicially reviewable. Period. No, I mean, let's see what the actual allegation is. That's the case. I mean, the actual allegation is that there are, like, two apps that were being used. Yeah. That's, like, the entirety of this. This is a motion to dismiss. Motion to dismiss. Right. And we accept that there is true, and we interpret all ambiguities in the plaintiff's favor. There's no ambiguity. Let me finish my question. The way we look at this case as a court is, based on the record that's before us, is that these apps exist, they automatically eliminate, erase messages, and there's no cataloging being done. Those are the allegations in the complaint. That's it. Right. And, in fact, you may ultimately be totally right that the only thing that's required is that the officials each make a decision about whether they're personal or presidential. But here you've got an algorithm doing that. It's being done automatically. Your Honor, I disagree. I think that what you're doing is, like, assuming that you really had an app and that it was being allowed that. Don't keep saying assuming. Okay. We are looking at this case on appeal from a grant of a motion to dismiss. Right? Right. And we have to accept the allegations as true and view them in the light most favorable to the plaintiff, right? Yes. Okay. If I could. You need to argue your case based on the record that we are supposed to view. Right. Okay? The only point that I was trying to make is that if you use an app, you have to decide in the same way that you would if you were just writing a piece of paper and then you were going to throw it away, that you know wasn't going to keep a record. You would have to decide, is this a presidential record or not? You have to make the same classification decision that you would if you wrote any piece of paper and then you were going to throw it away. Right. And that's all I'm getting from those allegations. Okay. Anything else? No. Anything else? Okay. Great. Thank you very much. So let me just add. Go ahead. Are you claiming that this, and I assume when you talk about the detailed guidelines, you're referring to the memo that's at JA 264 to 66, right? Right. This is the memo, the February 22, 2017 memo. Right. That's the detailed guidelines you're referring to? Yes. Nothing more? That's correct. Okay. Which says, to the extent practicable, you should categorize materials as presidential records when they're created and without the approval of the Office of the White House Counsel, you should not use instant messaging systems, social networks, or other Internet-based means of electronic communications to conduct official business. Right? So they're saying, don't do this, period. Yes. Don't use things like Signal and Confide. Right. And so your case is, okay, maybe people are using them, but that would be in violation of White House guidelines. And if they were using them for official business and not preserving because the apps are designed not to preserve, that would be in violation of this White House memo and would be in violation of the Presidential Records Act, but it is under Armstrong 1, not enforceable by this court, period. That's correct. Okay. Then let me ask a second question. Assume, hypothetical, okay, that the memorandum is not properly enforced. All right? It's not, we can't look at it. Now what? I mean, I mean, So we assume you're right that no court can review the memorandum or any individual compliance with it. That's Armstrong. Suppose there's no memorandum because it's not properly in the record. Then what? I think we're at the same point. Hypothetical. I think we're at the same place that you would be saying that there are individuals in the EOP who are, the allocation would be that they're using it in like not just for personal but also for Presidential Records Act material. No, no, no. No, because I thought your point was is that the memorandum satisfied the President's obligation under the Presidential Records Act to classify. Because you agreed these have to be classified somewhere. Someone's got to do it, right? Now, if we take the memorandum off the table, what in the record tells us where the classification is being done? It would be, I mean, again, I think it's being done at the same level. You think, but where in the record do we know that people who use these apps are making that judgment? Well, they may not have. I mean, I'm willing to assume, I mean, just for purposes of argument, I'm willing to assume that that's true. But that doesn't make them reviewable. And indeed, even under the Federal Records Act where there is an enforcement scheme, what the Court said was allegations that some people are not complying like we are, you know, we don't police that. That's not what Judge Tatel's asking. He's saying, indulge us a little bit. Let's assume maybe there is something. It appears you're making an argument that the case is moot because we have the guidelines that they're asking for. All he asked you is, is there someplace in the record that we can see that so that in reviewing this on a motion to dismiss we can say, yeah, they're right, it's moot. Is there any place? I mean, other than the guideline? Yeah. I mean, there's guidance that's issued. It's out there. So, I mean, look, our argument is this. It's not reviewable to begin with. If it were reviewable, like, at all, the Court would properly look to what's out there. If there's a question that I understand to have been asked, which is that supposing the guidelines had been issued and we had an allegation that people were using a particular app that they knew couldn't make a record, and therefore, like, not just for personal business, but for presidential records. That wasn't the question. I'm sorry. I totally misunderstood that. That's all right. Thank you. Okay, thank you. Let's see. Mr. Clark, I think you were out of time. Is that right? But you can take two minutes. Okay. Maybe you'd start out by telling us what your view is about this memorandum. Absolutely, Your Honor. That's where I was going to start anyway. The memo is not in the record. 12D, Federal Rules of Procedure 12D would say because it was submitted, it would have to be turned into motion for summary judgment. But it's law. It's not factual material in that sense that there would be discovery about it. I mean, nobody's disputing that this is, in fact, a memorandum from Passantino to through McGann to all personnel, right? No, I think, Your Honor, there would be discovery about it. Would there be? Are you disputing that it is, in fact? No, it is, in fact, the memo. I'm not disputing that. Okay. I'm disputing that. And let's assume when you do this. So why doesn't it satisfy the president's category? It doesn't satisfy because the very provision that you just read is followed by the statement saying if you ever generate or receive presidential records on such platforms, you must preserve them by sending them to your EOP email account via screenshot or other means, which is technologically impossible with respect to the apps we're talking about. So this cannot be dealing with those apps. It cannot govern those apps because you can't, as a matter of policy, do something. Oh, you mean because it's disappeared? It's disappeared. Can I just ask you a technical question? I'll try my best. When you get the message and you read it, does it disappear or do you have to swipe to make it disappear? There's two different platforms. One platform, it just disappears when you read it, and the other platform, you swipe over it, but it's still... Okay. So for the latter, it's not a problem. You just don't swipe. Presumably, you could actually take a phone and take a picture of that one. That's actually how the FBI has people do this. And you take a picture of that other message on it and then capture it that way. So either way, either way, it can be done. Correct? It is... Well, with respect to one, it can be done. With respect to the other... Well, I guess if you take a picture of the phone, yes, you could do that. Because you just told me you can take a screenshot. If you take a screenshot, a picture of it, you could do it. It's possible. Well, Mr. Clark, if I'm working in the White House and I'm reading this and I'm understanding in good faith my obligations, I would understand this to prohibit me  for official business because, first of all, it says that I shouldn't use Internet-based means of electronic communication without the approval of the FBI. Right. Right. Right. But if I don't have the approval of the White House Counsel and presumably if I try to get approval of the White House Counsel to use Signal or Confide, I wouldn't be able to because I wouldn't be able to preserve them. So if we assume the people in the White House are reading this, understanding it as fully as they can and operating in good faith, they will not use Signal or Confide at all for official business. Isn't that the case? Your Honor, this entire discussion is the reason why this should be happening at the District Court under Rule 56. No, I'm just asking you that question. If that were the case, right, this gives me as an official operating in good faith, this gives me enough guidance and the guidance is no Signal, no Confide for official business, right? And I know you believe that notwithstanding that there may be people who are using them, right? I understand that's the allegations of your complaint but I'm just saying looking at this on its face and I'm trying to assess if this is properly before us as tantamount to agency guidance or a legal rule or regulation not triggering Rule 56 and summary judgment questions. If it's properly before us then the questions about whether there might actually be personnel who are violating this, those are the kinds of questions that fall under Armstrong 1, no? They are, Your Honor. I think it's that next question. Why is that statement there, that next statement, I'm sorry. If you ever generate or receive you're supposed to do this and you can't do it. I think they're talking about apps here that you can do that with. No, but it immediately follows that you cannot use them unless you have White House Council approval and so we're thinking, okay, some people like, you know, some people who are doing Twitter, let's say, on an official basis have the White House Council's approval and they know that they preserve them by sending them to the EOP email account, right? Absolutely, Your Honor, and those sorts of apps are what this, just based on your reasoning right there, that's how I read this too. I read this as saying those sorts of apps, the kind of apps that actually preserve things because that way you're not supposed to do it unless you get authorization and if you do do it you're supposed to forward them. These apps don't fall into that category which is why our position is they don't, they're not covered by it. Well why isn't any, given this guidance, why isn't any use of those apps a question of whether the staff are or are not following the guidance that the White House counsel has provided? Because it's not absolute. The next sentence, the very next sentence is you can do something else with it. If you do it you can forward them. Only with approval of White House counsel? I don't read it that way Your Honor. I think if you ever generate a complaint    it's not going to be an official complaint. It's not connected to approval. Let me ask you this. Since this is an official, since you're not contesting existence of this document, what would be wrong with us saying look, we think you're right that at least with respect to two     but but there's a serious problem with this court. The question of whether the court can enter a mandate with  document is a serious question as to whether or not so something has to happen but we've got this presidential memorandum now this guidance and yes it hasn't been so we sent that back to the district court to let you and the government argue about whether it is in fact a response to the categorization requirement. I think that wouldn't be an unreasonable outcome in the case your honor and I think in that case they're banned they didn't put that in the record. But then the counter to my question for you is if you agree that we can't that the courts can't review the guidelines once they're issued then what difference does it make whether there's defects and these are the guidelines. I don't agree that you can't imagine if that memo said classification guidelines you should use your own judgment with respect to classifying. There's some point where the classification guidelines don't make sense and what we're saying is these don't make sense as to how to classify those acts. Okay. Thank you. Case is submitted.
judges: Tatel, Pillard, Edwards